**In the Matter of John Alden SETTLE, Jr. etc., Debtor.**

**Bankruptcy No. Bk–79–138.**

United States Bankruptcy Court, D. New Hampshire.

March 5, 1981.

**32**

John Alden Settle, Jr., pro se.

Ernest L. Bell, III, Keene, N. H., for Peter S. Espiefs, trustee.

## ORDER

JOSEPH J. BETLEY, Bankruptcy Judge.

John Alden Settle, Jr. filed a voluntary petition in bankruptcy on March 30, 1979. In his Statement of Affairs filed with the schedules, the Debtor in answer to question 8 of said Statement of Affairs stated as follows:

"8. Property held for another person. What property do you hold for any other person? (Give name and address of each person, and describe the property, the amount of value thereof and all writings relating thereto) None"

In filling out Schedule B–2—personal property of the voluntary petition, the Debtor made the following answers:

| | | |
|---|---|---|
| "c. Household goods, supplies and furnishings: | Misc. chests, bookcases, chairs, lamps, etc. at homestead – Rte. 63, Westmoreland, N. H. | $1000.00 |
| c. Books, pictures and other objects, stamp, coin and other collections: | Bible, books, dictionery at homestead | 400.00 |
| d. Wearing apparel, jewelry, firearms; sports equipment and other personal possessions: | Wearing apparel at homestead Guns (misc) at homestead | 2000.00 500.00 |
| l. Inventory: | None other than personal property described. | |

At the hearing on December 30, 1980 at Keene, New Hampshire, Mary Thomas of Black Mountain Road, Brattleboro, Vt. testified that she rented on October 23, 1978 space on the second floor in the barn to a Willard Crayton who stated that he wanted to store his furniture. She identified John Alden Settle, Jr., the Debtor herein, who was present in the court room, as the party that gave her the name of Willard Crayton when he rented the premises in question. He brought furniture twice for storage on the second floor barn and the same was delivered to the second floor by an elevator. Mrs. Thomas testified that the Debtor had no key to this storage space and that she let him in twice; however, he did procure a lock at some point thereafter and they each had a key. Mrs. Thomas further testified that on or about February 1, 1979, she rented garage space between the big barn and her house to the said Willard Crayton for storage space. The said John Alden Settle, Jr. alias Willard Crayton had a key to the garage space. She testified that he paid rent every three months and the last time that he paid rent was on July 1, 1980 since she sold her property on August 10, 1979 to a Richard McGinn and had no more dealings with the Debtor herein or his prop-

erty. She testified that she never saw Ann Savory Settle, never spoke to her, and never received any payments of rent from anybody else except the Debtor herein.

Christopher Loughman of 160 Edgewood Ave., Longmeadow, Mass. identified the Debtor herein as the man who together with a Mrs. Savory and her son, Reed Savory, on March 17, 1979 assisted, with his truck, and the Debtor's Continental automobile and a U–Haul trailer to pack and move furniture, furnishings, chandeliers, etc. from a home in Westmoreland, N. H. to a garage, identified by the witness as Exhibit 1–A, Brattleboro, Vt. The witness stated that the U–Haul trailer was full and that his truck only had a few pieces of furniture on it. The witness stated that after the furniture and furnishings, etc. were unloaded at the garage in Brattleboro, Vt., the Debtor put some paper around the windows of the garage. The witness testified that Mr. Settle paid him $50.00 and paid Reed Savory $50.00 for assisting in this moving effort.

Paul Wooley, Route 63, Westmoreland, N. H. testified that he knew Mr. Settle for three or four years when Mr. Settle lived in Westmoreland. He testified that in the fall of 1978, for two or three days, he assisted in moving furniture, etc. from Mr. Settle's home in Westmoreland, N. H. to a barn in Brattleboro, Vermont—second floor—in a big box Ryder truck. Mr. Wooley testified that they moved paintings, glasswear, a large oak table, hutch, grandfather clock etc. and that at all times the truck was full. Mr. Wooley testified that the Debtor herein stated that he was hiding this furniture from his wife, Cynthia Myers. Mr. Wooley further testified that he did not move any rugs; however, he stated that he saw two rolls of Oriental rugs in Mr. Settle's Continental car all rolled up. He stated that after he finished helping in the moving, everything was gone from the first floor of the Westmoreland house, that some of the furniture went to the third floor of the Westmoreland property where Mr. Settle was staying. The witness stated that he received a check for $88.00 and that as far as he could remember, it was John Settle's

check. The personal property located in the barn and garage at Brattleboro, Vermont (Exhibit 1–A, 1–B and 1–C) were removed by the Trustee to Bolster's Warehouse, Brattleboro, Vermont and were appraised by Paul W. Lawton, Chesterfield, N. H. on September 20, 1979 in the amount of $33,-637.00. (Trustee's Exhibit 20).

George B. Lattimore of 204 Elm St., Keene, N. H., formerly a Photographer for the Union Leader and also a private photographer, testified that in early 1978, he got acquainted with John Alden Settle, Jr. and at various times, took photographs in color of the various rooms, furniture, furnishings, portraits, etc. at the Westmoreland home of Mr. and Mrs. Settle. The witness stated that there was a "fascinating library" and "oriental rugs galore." Trustee's Exhibit 12 discloses the Persian rug in the living room in full color. Trustee's Exhibit 14 consists of 84 slides taken by Mr. Lattimore of the interior and exterior of the Westmoreland house. The witness testified that the last time he saw the Persian rug in the living room in full color was sometime in the fall of 1978 when Mr. Settle was served with divorce papers by Cynthia Myer. The witness testified that in July 1979, he had a conversation with Mr. Settle concerning Trustee's Exhibit 12 (Persian rug), which the witness said that Mr. Settle wanted a copy of this rug in full color. The witness testified that Mr. Settle told him "that he was selling the rug to Ann Savory and wanted to document it." The witness testified that sometime in August 1979, Mr. Settle wanted another picture of this Persian rug and he stated he wanted this picture "so he could attach it to a bill of sale." The witness stated that on July 31, 1979, Mr. Settle picked up the picture and stated that he sold the Persian rug to Ann Savory Settle, who was in the car with him.

Mrs. Ann Savory, now Settle testified that she purchased the Persian rug from John Settle before she was married to him; however, she stated that she did not remember the amount that she paid for the rug or where she got the money.

Trustee's Exhibit 21 describes inventory of furniture, pictures, mirrors, tables, floor lamps, desks, chairs, headboards, etc. consisting of 11 pages which were stored by John Settle and Ann Savory on August 7, 1979 at Hallmark Van Lines, Inc., 6 South Park Place, Holyoke, Mass.

Trustee's Exhibit 19 describes 5 guns and miscellaneous ammunition in possession of Longmeadow, Mass. Police Department as property of John Settle and which were appraised by Philip Castleman of Castle Arms, Longmeadow, Mass. on August 30, 1979 at $920.00.

Kevin A. Quinlan of Northfield, Mass. was an employee of Ken Miller and Sons, Auctioneers and Appraisers and has been with this firm for some ten (10) years. He testified that in the first part of April 1979, in response to a telephone call from a Mr. Savory, he went to an apartment at 6 South Park Place, Longmeadow, Mass. and met a Mr. Savory, whom he identified as the Debtor, John Alden Settle, Jr., a Mrs. Savory and a child. The alleged Mr. Savory offered for sale an oak china closet but the price that was quoted was more than Mr. Quinlan wanted to pay. The alleged Mr. Savory also represented that he was the owner of some Waterford crystal vases—which he indicated were a limited type edition of crystal and after showing Mr. Quinlan 8 × 10″ black and white photographs of these vases, he offered to sell them for $8000, stating that the President of the United States had a set. Mr. Quinlan felt that this was more than he wanted to pay and the deal was off.

Mr. Quinlan further testified that the Debtor herein, known to him as Mr. Savory, stated that he inherited the china closet from the estate of his mother. He likewise indicated that the display cabinets were his mother's and he acquired them by inheritance. Trustee's Exhibit 7–A–B–C were shown to Mr. Quinlan and he indicated that they appear like the pictures of the vases offered by the Debtor herein for sale at $8000.

Raleigh G. Clark of Swanzey Center, N. H., the owner and operator of North East Outfitters of Keene, N. H. testified that on or about March 7, 1980, John Alden Settle, Jr. indicated to him that he had been evicted from his home at Westmoreland, N. H. and wanted to store his property—130–140 boxes of books and other furniture and furnishings—at his storage place. He testified that he knew John Settle since late 1976. The witness testified that he saw the Waterford crystal, Exhibits 6 and 7, in his place of business in the fall of 1978. He further testified that he saw the same crystal in his own house when Mr. Settle and Mrs. Savory lived in his house sometime after March 7, 1980 and that they lived in his home for a period of some four weeks. The witness further testified that the Waterford crystal was stored in a carton in his bedroom and were displayed to the witness and his wife. The witness testified that the crystal appeared "to be like Exhibits 6 and 7." Mr. Clark testified that Mr. Settle told him that the crystal "were very valuable." The witness stated that the crystal were later "turned over to Ann Savory and she was going to turn them over to Attorney Edward Hurley of Springfield, Mass. in order that the attorney could bail out Mr. Settle who was in jail." The witness also testified that on February 26, 1980, he was asked by Mr. Settle to accompany him and Mrs. Savory to Holyoke, Mass. and help him to sell the Waterford crystal shown in Exhibits 6 and 7. The witness testified that when they arrived at Holyoke, Mass., he went into an antique shop and offered to sell the crystal for $9000.00 but the owner did not buy.

Trustee's Exhibits 10 and 11 are copies of deeds of land in Marion County, Florida and in Sandoval County, New Mexico which were in the name of Alberta C. Settle, a widowed woman, and John Alden Settle, Jr., her son, a married man, as joint tenants with right of survivorship, which were dated March 14, 1978 and October 3, 1977 respectively. The schedules of the Debtor did not reveal these real estate holdings of the Debtor even though his mother died in July 1978 and the Debtor was the owner of said real estate on March 30, 1979.

According to the evidence, neither John Alden Settle, Jr. nor Ann McCullough Savory now Settle have ever made a list of furniture or personal property and demand same from the Trustee. According to the evidence, John Alden Settle, Jr. and Ann McCullough Savory now Settle were living together for about one year at Westmoreland, New Hampshire. They were married July 2, 1980. At the time that John Alden Settle, Jr. filed a voluntary petition in bankruptcy on March 30, 1979, Ann McCullough Savory now Settle was living at 6 South Park Place, Long Meadow, Massachusetts.

Ann McCullough Savory now Settle testified that the 9 × 16 Tabriz Persian rug (hunting pattern) (Exhibit 12) was in the trunk of the car when on July 16, 1979, she went to the store in West Hartford, Connecticut and offered the said rug for sale. She stated as follows: "I thought the rug was worth $10,000. John A. Settle stayed in the car when I went to the store."

During the course of examination of John Alden Settle, Jr., he testified that he had a storage place with some furniture in a barn in Keene, New Hampshire other than the storage place owned by Raleigh G. Clark and known as Northeast Outfitters of Keene, New Hampshire. He was twice requested to give the location of this storage place and on both occasions, he refused to answer. He was warned that since he filed this voluntary petition in bankruptcy, that inquiries as to storage of any of his furniture or furnishings was pertinent evidence and he was ordered to answer. He refused and the court found him in contempt and fined him $250.00, which amount he was ordered to pay on or before January 9, 1980. To date this fine has not been paid. The witness was further asked whether he was at the Araby Gallery, Boylston St., Boston, Mass. with Ann Savory on May 11, 1979 and he refused to answer, claiming the Fifth Amendment. The witness was warned that the Fifth Amendment did not apply since this was not a criminal proceeding and he was again ordered to answer. He refused to answer and the court found him in contempt and fined him $250.00. This fine has not been paid to date.

John Alden Settle, Jr. rented the second floor space in a barn at Brattleboro, Vermont on October 23, 1978 and on or about February 1, 1979, he rented from the same landlady, namely: Mrs. Mary Thomas, garage space between the big barn and her house. This latter date was but sixty days before the filing by John Alden Settle, Jr. of a voluntary petition in bankruptcy. Christopher Loughman testified that on March 17, 1979, some thirteen days before the filing, he helped the bankrupt to move furniture, furnishings, chandeliers, etc. from his home in Westmoreland, New Hampshire to the newly rented garage. This property and property already stored in the adjacent barn have been appraised at $33,637.00 (Trustee's Exhibit 20). Other property of the bankrupt, from the Westmoreland home, and from the apartment of his late mother, Alberta G. Settle who died in July 1978, was stored by the bankrupt at Hallmark Van Lines, Inc., Holyoke, Massachusetts (Trustee's Exhibit 21) and the Tabriz Persian rug (hunting pattern) which is presently stored at West Hartford, Connecticut, and the bankrupt stored other property at Springfield, Mass., Longmeadow, Mass., New York City and at Northeast Outfitters of Keene, New Hampshire.

The bankrupt, in his Statement of Affairs filed with his schedules of assets and liabilities, indicated that on March 30, 1979, he held no property for any other person and further, the schedules indicated that all he had was $1000.00 worth of chests, bookcases, chairs and lamps and $500.00 worth of guns at his homestead. He likewise, under oath, testified on April 20, 1979, at the first meeting of creditors, as follows:

"Does your schedule of property constitute a full and accurate list of all property belonging to you, whether standing in your name or in the name of any other person?

Answer: "yes".

"Have you kept books of accounts or records from which your true financial condition may be ascertained?

Answer: "yes".

Ann McCullough Savory now Settle was in court on December 30, 1980 and took her turn in questioning witnesses. She appeared in normal health and there appeared no indication that she was in distress. This situation continued on December 31, 1980 at the morning session and only when she was called by the Trustee's counsel to testify at the afternoon session, that she immediately became upset, pleading the Fifth Amendment and stating that she should not be called upon to prove the Trustee's case. She was warned that she was a witness in a civil proceeding, that the Fifth Amendment did not apply and that she was like any other witness in any civil proceeding. She was ordered to testify and answer questions propounded by the Trustee. She continued to be evasive, immediately began to complain that she was not feeling well, requested recess, which was granted, and continued to be indecisive and generally claimed that she did not remember, etc. and that she was too ill to continue. From the court's observation of this witness, it was apparent to the court that she was unprepared for the questions and used every means, including the claim of being ill, to stymie the questioning of the attorney for the Trustee. She did not appear at the hearing on January 2, 1981 and her husband, John Alden Settle, Jr. stated that she was ill and unable to appear.

The court is constrained to observe that here we have a bankrupt, John Alden Settle, Jr. who has meticulously planned, prior to March 30, 1979, how to secrete his assets from his creditors and the Trustee in Bankruptcy, by arranging for storage facilities for his valuable personal property, just before and subsequent to his filing, resorting to the use of an alias, "Willard Crayton", hoping that he could this way elude detection and discovery of this secreted property. The bankrupt claims "irreparable harm by virtue of the court's ex-parte orders permitting the Trustee to collect this secreted property." By virtue of these ex-parte orders, the Trustee was able to corral this valuable property and avoid "irreparable harm to his creditors."

"SECTION SEVENTY (11 U.S.C. ss.110):

Title to Property. a. The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located (1) documents relating to his property; (4) property transferred by him in fraud of his creditors;

All property, wherever located, except insofar as it is property which is held to be exempt, which vests in the bankruptcy within six months after bankruptcy by bequest, devise or inheritance shall vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date when it vested in the bankrupt, and shall be free and discharged from any transfer made or suffered by the bankrupt after bankruptcy."

At the hearing on January 2, 1981, John Alden Settle, Jr. was warned that when a recess was called for 5 minutes, it did not mean 20 minutes. In the afternoon, a recess was called for 5 minutes to permit the stenographer to change the ribbon on the stenographic machine. Mr. Settle left the court room and failed to return for some 20 minutes or better and on motion of counsel for the Trustee to end the hearings because of the absence of Mr. Settle, the motion was granted. As everyone was leaving the court room, Mr. Settle reappeared but the hearings were not continued.

The court makes the following findings of fact:

1. That at no time from March 30, 1979 to January 2, 1981 did John Alden Settle, Jr., Ann M. Savory now Settle or Joanna Settle have any title or any possessory interest to the property held in storage at the premises formerly owned by Mary Thomas and situated in Brattleboro, Vermont.

2. That at no time from March 30, 1979 to January 2, 1981 did John Alden Settle, Jr., Ann M. Savory now Settle or Joanna Settle have any title or any possessory interest in the Persian Tabriz rug presently being held in West Hartford, Connecticut.

3. That at no time from March 30, 1979 to January 2, 1981 did John Alden Settle, Jr., Ann M. Savory now Settle or Joanna Settle have any title or any possessory interest in the personal property presently being held in storage in Springfield, Massachusetts and/or Holyoke, Massachusetts.

4. That at no time from March 30, 1979 to January 2, 1981 did John Alden Settle, Jr., Ann M. Savory now Settle or Joanna Settle have any title or any possessory interest in the personal property presently being held in storage at Northeast Outfitters at Keene, New Hampshire or any other storage place in Keene, New Hampshire.

5. That at no time from March 30, 1979 to January 2, 1981 did John Alden Settle, Jr., Ann M. Savory now Settle or Joanna Settle have any interest or any possessory interest in the personal property presently being held in storage at Longmeadow, Massachusetts and New York City.

6. That at no time did John Alden Settle, Jr. ever present to the Trustee a list of personal property that he claims exemption to under the Bankruptcy Act.

7. That at no time did Ann Savory now Settle or Joanna Settle ever present to the Trustee any list of property that they claim to be their property and not that of John Alden Settle, Jr.

8. That as of March 30, 1979, John Alden Settle, Jr. was the title holder of the Waterford crystal vases shown in Trustee's Exhibits 6 and 7, and that sometime subsequent to the filing of a voluntary petition in bankruptcy by John Alden Settle, Jr., he or his agent or agents transferred possession of the said vases to Attorney Edward N. Hurley, Longmeadow, Massachusetts and that he presently has possession of the said vases as shown in Exhibits 6 and 7.

9. That as of March 30, 1979, John Alden Settle, Jr. held title to real estate situated in Marion County, Florida and in Sandoval County, New Mexico as more particularly described in Trustee's Exhibits 10 and 11.

10. That as of March 30, 1979, John Alden Settle, Jr. held title to a certain I. B. M. typewriter that was not exempt property and was not claimed to be exempt by him. He still has possession of said I. B. M. typewriter.

11. That as of March 30, 1979, Peter S. Espiefs, Esq. as Trustee in Bankruptcy for the estate of John Alden Settle, Jr. became vested with the title to all personal property of John Alden Settle, Jr. and more particularly all the personal property presently held in storage in Bolster Warehouse, Inc., Brattleboro, Vermont (subject, however, to the claims of Cynthia Meyer), all the personal property presently held in storage in Hallmark Warehouse, Inc., Holyoke, Massachusetts, all the personal property presently held in storage by Raleigh Clark d/b/a Northeast Outfitters, Elm Street, Keene, New Hampshire, the Tabriz Persian rug presently held by the West Hartford Police Department, West Hartford, Connecticut, and the Waterford vases presently held by Edward N. Hurley, Longmeadow, Massachusetts.

12. That proceeds from the sale of all personal property of John Alden Settle, Jr. through Plaza Art Galleries, New York City, are found to be properly held by Peter S. Espiefs, Esq., Trustee and said proceeds are ordered disencumbered of any and all claims of John Alden Settle, Jr.

13. That the debt of Irving Saxe, New York, New York to John Alden Settle, Jr. and recovered by Peter S. Espiefs, Trustee, as ordered by an ex parte order of the court, was the property of John Alden Settle, Jr. as of March 30, 1979 and was properly recovered by Peter S. Espiefs as Trustee.

 The court makes the following rulings of law:

a. That at all times since his appointment as Trustee, Peter S. Espiefs has carried out the orders of the court in marshalling the assets of John Alden Settle, Jr.

and being held in Keene, New Hampshire by Northeast Outfitters of Keene, New Hampshire; Bolsters Warehouse, Brattleboro, Vermont; Police Department, West Hartford, Connecticut; New York City; Springfield, Massachusetts and/or Holyoke, Massachusetts and said property is declared to presently be the property of the Trustee, Peter S. Espiefs, and not that of John Alden Settle, Jr. and that John Alden Settle, Jr. is not entitled to any exemptions under the Bankruptcy Act.

b. That all of the property, the subject of paragraph a, is that of the Trustee and no other party has any claim or interest thereto.

c. That the Trustee, Peter S. Espiefs is ordered and directed to marshall the property in paragraph a at Northeast Outfitters of Keene, New Hampshire, Bolsters Warehouse of Brattleboro, Vermont (Lawton's Auction facility) and dispose of same by public auction as soon as reasonably possible.

d. That all of the turn-over orders previously issued by this court are ruled valid, under the circumstances, at the time of issuance and that the method of the Trustee for obtaining said orders, under the circumstances, were proper and legal.

e. That the court rules that John Alden Settle, Jr. has committed fraud upon the court and upon his creditors by his planned concealment and transferring his assets both before and after the filing of his voluntary petition on March 30, 1979.

f. That the court rules that the real property located in Marion County, Florida and in Sandoval County, New Mexico is the sole property of the Trustee and he is directed to proceed to sell same at private sale or public auction as he deems advisable in the best interest of the creditors.

g. That the court rules that the property located at Northeast Outfitters, Keene, New Hampshire, Bolsters Warehouse, Brattleboro, Vermont and property located in Springfield, Massachusetts and Holyoke, Massachusetts was properly fraudulently concealed by John Alden Settle, Jr. and it is therefore not exempt property.