**In re Patricia F. DIPZINSKI.**

**Bankruptcy No. 97–10389M.**

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

June 16, 1999.

Louis J. Nisenbaum, Newport, for Debtor.

## ORDER

JAMES G. MIXON, Chief Judge.

The matter pending before the Court is an objection by the Trustee to a motion to amend the schedule of exemptions filed by Patricia F. Dipzinski ("Debtor"). After a hearing on April 23, 1999, in Jonesboro, Arkansas, the matter was taken under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction to enter a final judgment in the case.

## FACTS

On October 17, 1997, the Debtor filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. Warren Dupwe was appointed Trustee. In schedules filed with the Court, the Debtor listed assets consisting of personal property valued at $3,148.00, which she claimed as exempt. She noted on Schedule I that her marital status was "divorced" and that the source of her income of $790.00 per month was social security.

The Debtor also indicated on her statement of affairs that she was not a party to any lawsuit within the preceding year. However, the Debtor was divorced less than a month earlier, on September 5, 1997, in the state of Michigan. Richard D. Hitt, the Debtor's Michigan divorce attorney, received notice of the Debtor's bankruptcy on November 19, 1997. On December 1, 1997, Hitt received a check in the sum of $22,667.50 for the Debtor's share of proceeds from the sale of marital real estate. Hitt stated that the Debtor called his office on January 20, 1998, demanding the money in question, and she repeated her demand on January 27, 1998. In early February 1998, Hitt forwarded $17,133.73 to the Debtor, retaining $5,533.77 as his fee.[1]

At some point in time not disclosed by the record, the Trustee uncovered the fact that the Debtor was involved in an ongoing divorce action in the state of Michigan and that she had received a postpetition cash settlement from the sale of marital real estate. The Trustee made written demand for the turnover of the money by letter dated April 6, 1998, and the Debtor surrendered the money within a few weeks after the Trustee's demand.

On September 24, 1998, the Debtor filed a motion to amend her schedules of exemption to exempt $8,275.50 of the $17,133.73 sale proceeds, pursuant to 11 U.S.C. § 522(d)(4) & (5). The Trustee then filed a timely objection to the motion to amend the Debtor's exemption.

---

1. In blatant violation of the automatic stay and the duties of a custodian of estate property and with full knowledge of the pending bankruptcy case in Arkansas, Hitt not only wrongfully disbursed property of the estate to the Debtor but also, without authority, applied $5,533.77 of the money to his pre-petition claim for attorney's fees. *See,* 11 U.S.C. § 362 (1994); 11 U.S.C. § 543(a)(1994); 11 U.S.C. § 549(a)(2)(B)(1994); Fed. R. Bankr.P. 6002.

**748**

## DISCUSSION

■ A debtor may amend schedules, including claims of exemption, "as a matter of course at any time before a case is closed." Fed.R.Bankr.P. 1009(a). *See also, Lucius v. McLemore*, 741 F.2d 125, 126 (6th Cir.1984); 4 Collier on Bankruptcy ¶ 527.08[2] (Lawrence P. King et al. eds. 15th ed. rev.1999).

■ However, a debtor who has intentionally omitted an asset will be denied the opportunity to amend the exemption claim to include the newly discovered asset. *In re Yonikus* 996 F.2d 866, 873 (7th Cir. 1993); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982); *In re St. Angelo*, 189 B.R. 24, 26 (Bankr.D.R.I. 1995); *Drewes v. Magnuson (In re Magnuson)*, 113 B.R. 555 (Bankr.D.N.D.1989) (citing *Redmond v. Tuttle*, 698 F.2d 414, 417 (10th Cir.1983); *In re Hanson*, 41 B.R. 775 (Bankr.D.N.D.1984)); 4 Collier on Bankruptcy ¶ 522.08[2] (Lawrence P. King et al. eds. 15th ed. rev.1999).

■ The evidence in the instant case is that at the time of the filing of her petition, the Debtor failed to disclose either that she had been involved in a divorce action during the previous year or that she owned an interest in marital real property. The fact that the Debtor's divorce became final only days before her bankruptcy filing diminishes the possibility that this lawsuit was inadvertently omitted from the schedules. This conclusion is supported by the fact that the Debtor listed the precise fee owed to her divorce attorney in her schedule of unsecured debts. Furthermore, the Debtor's testimony that she did not understand that a divorce action is a type of lawsuit is not credible.

Even if the Court credits the Debtor's testimony as to her confusion over whether a divorce is a lawsuit, other facts suggest that the Debtor was attempting to conceal an asset. In addition to omitting any mention of the asset from her schedules, the Debtor never volunteered information concerning the asset to the Trustee, who learned of the sale proceeds through a third party. Furthermore, the Debtor did not transfer the asset to the Trustee of her own volition but did so only when the Trustee threatened a turnover action.

The Debtor offered no rational explanation why she omitted the money as an asset of her estate. Therefore, the facts in this case lead to the conclusion that the Debtor intentionally omitted the asset from the original schedules. Under the circumstances, the Debtor's conduct in committing a bankruptcy fraud precludes her from amending her schedules to exempt the property she tried to conceal.

IT IS SO ORDERED.